UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

AHMAD MOHAMMAD AJAJ,

                      Plaintiff,                      07 Civ. 5959 (PKC) (DCF)

    -against-                                    MEMORANDUM
                                                      AND
ROSEANN B. MACKECHNIE, et al.,              ORDER

                      Defendants.

-----------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

        Plaintiff alleges that defendants deprived him of rights protected by the Constitution or federal law in informing his attorney but not also informing him that the United States Court of Appeals for the Second Circuit had denied his petition for hearing and rehearing en banc. This, he alleges, deprived him of the right to file a timely petition for a writ of certiorari to the United States Supreme Court and a timely petition for a writ of habeas corpus. He seeks money damages and declaratory and injunctive relief permitting him to file and deeming as timely petitions for writs of certiorari and habeas corpus.

        The claims are asserted under 42 U.S.C. §1981, 1985-86, the Federal Tort Claims Act, 28 U.S.C. §2671-80, and various state law theories. The claims are also construed as asserted under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). His pleading invokes rights under the Due Process Clause, Equal Protection Clause and the First Amendment. He asserts that he has been singled out by reason of his status as "an Arab, Palestinian and Muslim prisoner." (Amended Complaint ("A.C.") ¶83.)

Defendants John M. Walker, Jr., a Senior United States Circuit Judge, and, Dennis Jacobs, a United States Circuit Judge and Chief Judge, both sitting judges of the United States Court of Appeals for the Second Circuit at the time of the events alleged in the complaint, move to dismiss on the grounds of absolute immunity. Defendants Karen Greve Milton, the Circuit Executive, Roseann B. MacKechnie, the former Clerk of the Court, Arthur M. Heller, Patricia Allen, Jin Hui Chin, Ralph Obas and Tracy W. Young, who are present or former members of the Clerk's staff (collectively, the "Staff Defendants") also move to dismiss on absolute immunity grounds. The United States also moves to dismiss on, among other grounds, the absolute judicial immunity of its officers, agents and employees. Defendants Bureau of Prisons ("BOP") and two BOP officials, John Vanyur and Harley Lappin move to dismiss on various grounds. Finally, Maranda Fritz moves to dismiss for failure to state a claim and because the claim is barred by the statute of limitations.

For the reasons stated herein, the motions are granted.

I.

Because plaintiff is a self-represented, incarcerated person, he is entitled to special solicitude and his pleadings should be construed liberally. See, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

Rule 8(a)(2), Fed. R. Civ. P., requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, __U.S.__, 127 S.Ct. 1955, 1964 (2007) (internal quotation marks, alteration and citation omitted). When a defendant tests the sufficiency of a complaint by a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim

-3-

rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S.Ct. at 1965). The complaint is measured against a "flexible plausibility standard," which obligates the "pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). This "does not require heightened fact pleading of specifics . . . ." In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); see also Erickson v. Pardus, __U.S.__, 127 S. Ct. 2197, 2200 (2007). However, it does "require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" Elevator Antitrust Litig., 502 F.3d at 50 (quoting Twombly, 127 S.Ct. at 1974) (alteration in Elevator Antitrust Litig.).

    On a motion to dismiss, a court must accept the allegations of the complaint as true and draw all reasonable inferences in the non-movant's favor. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir. 1995) (per curiam). The Court is limited to consideration of the facts as stated in the complaint, any documents which are attached to the complaint, and any documents which are incorporated by reference into the complaint. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996). The Court may consider documents annexed to the complaint or incorporated by reference into the complaint without converting the motion into a motion for summary judgment. See Int'l Audiotext Network, 62 F.3d at 72 (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v.

Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted); see also Levy v. Southbrook Int'l Inv., Ltd., 263 F.3d 10, 13 n.3 (2d Cir. 2001).

II.

The absolute immunity from civil liability afforded to judges for acts performed within their judicial capacities arises from strong policy considerations. "Imposing . . . a burden [of exposure to liability] on judges would contribute not to principled and fearless decisionmaking but to intimidation." Pierson v. Ray, 386 U.S. 547, 554 (1967). "Like other forms of official immunity, judicial immunity is immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id.

Here, plaintiff alleges, among other things, a breach of duty on the part of the present Chief Judge and his immediate predecessor "to protect the public and indigent criminal defendants from lawyers who are unable or unwilling to defend them in litigation and . . . to protect the rights of the public and indigent litigants to adequate, effective and meaningful access to the court free from racially [sic] interference and free from unnecessary obstacles." (A.C.¶222.) The acts alleged to give rise to the liability of the judicial defendants are acts normally performed by judges in their judicial capacities. See Mireles, 502 U.S. at 12 (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)). A court rule, policy or practice of notifying only the attorney of record of court communications cannot be taken fairly out of the context in which it arises and, then, characterized as purely ministerial. Notification of rulings is ancillary to the court's core function of deciding cases presented to it. The practice of

communicating only with an attorney of record and not also with the represented party fosters a single channel of communication and reduces the possibility of error that arises from multiple spokespersons for a party. It reduces the possibility that the represented person will say or do something that prejudices his case and reduces the possibility of prejudice to the represented opposing party whose attorney would be barred under professional rules from responding to a communication from the represented person.

Having reviewed all of plaintiff's complaints against the judicial defendants, no plausible claim is asserted that the judges engaged in acts of the type not normally performed by judges, see id., or "'acted in the clear absence of all jurisdiction.'" Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997) (citing Stump, 435 U.S. at 356-57).

The Staff Defendants also seek protection under the doctrine of absolute judicial immunity. It is "the nature of the function performed, not the identity of the actor who performed it," that determines whether an individual is entitled to immunity. Forrester v. White, 484 U.S. 219, 229 (1988). The Staff Defendants, all present or former employees of the United States Court of Appeals for the Second Circuit, performed their work by, through and under the direction of that Court. Ajaj was represented by counsel at the time of the denial of his petition for rehearing and rehearing en banc and he alleges that the Staff Defendants had been aware of the problems he was having with his attorney and should have notified him directly of the order. In notifying Ajaj's counsel, but not Ajaj, the Staff Defendants were performing a function ancillary to the Court's core task of deciding cases. Rule 45(c), Fed. R. App. P., expressly provides that "[u]pon the entry of an order or judgment, the circuit clerk must immediately serve a notice of entry on each party, with a copy of any opinion, and must note the date of service on the docket. Service on a party

represented by counsel must be made on counsel." The responsibility for informing the client rests with the attorney appointed pursuant to the Second Circuit's Criminal Justice Act ("CJA") Plan. See CJA Plan¶IX.C. Thus, the Staff Defendants operated in the course of their official duties and in accordance with the Rule. The Staff Defendants also operated within the sphere of case processing and readying a case for a judicial ruling in requiring that proposed filings be made by a represented party's attorney of record. All acts performed by the Staff Defendants – or failures to act – were intertwined with the judicial function. See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity.") Having reviewed the entirety of the plaintiff's claims against the Staff Defendants, no plausible claim is presented that is not barred by the doctrine of absolute judicial immunity.

### III.

The nineteenth claim for relief asserts a tort claim against the United States which this Court construes as having been asserted under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.§2671-80. He alleges that the "negligent acts and omissions of defendant USA's employees and agents are and have been the direct and proximate cause of serious, permanent and continuing injuries and damages to plaintiff." (A.C.¶218.) The allegations of negligent acts and omissions of employees or agents of the United States incorporated into the nineteenth claim all relate to the timing and manner of notification of the decision of the Second Circuit. (See A.C.¶213.)

The FTCA, by its express terms, permits the United States to assert the "judicial . . . immunity" of its employees as a defense to its own liability:

> With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

28 U.S.C.§2674.

The absolute judicial immunity of its judicial officers and employees is a complete defense to the claim against the United States. I need not reach the defense of the statute of limitations.

IV.

In the twenty-first cause of action, plaintiff asserts a claim against the BOP, Harley Lappin, the Director of the BOP, and John Vanyur, Assistant Director of the BOP (collectively, the "BOP Defendants"). The claim is denominated as one for "Declaratory and Injunctive Relief." Plaintiff asserts that the BOP Defendants' "practices and policies hinder adequate, effective and meaningful access to judicial process." (A.C.¶238.)

Plaintiff's complaint contains a lengthy list of other wrongs allegedly caused by policies or practices of the BOP Defendants, including but not limited to: "denying plaintiff legal correspondence with his jail-house lawyers," "forcing him to repeatedly declare hunger strikes to prevent him from working in his case," creating the "the pain and the fear that the stun belt would be activated intentionally or by mistake," placing informants in plaintiff's range," "preventing communication between Arab and Muslim co-defendants," "refusing to provide legal aid programs, or legal training programs or assistance from persons trained in the law," denying access to "legal materials from legal web-sites" and generally failing to supply adequate paper, supplies, books, stamps and written and phone access to courts and attorneys. (A.C.¶240.) The relief plaintiff seeks is entirely prospective.

Plaintiff's claims fail because he has not demonstrated that he has met the Article III standing requirements. These requirements have been neatly summarized:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and footnote omitted) (alterations in Lujan).

Here, the injury-in-fact that plaintiff has suffered from the assertedly late notification of the Second Circuit's ruling is not causally connected to the conduct of which he complains; none of it may be fairly traced to the actions of the defendants as distinguished from that of third parties not before the court on plaintiff's twenty-first claim. While less need be shown at the pleading stage than at the summary judgment stage, plaintiff must, at the pleading stage, set forth "enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible . . . .'" Twombly, 127 S.Ct. at 1974. This he has not done.

Characterizing the claim as one for declaratory or injunctive relief does not dispense with these hurdles. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983) ("[P]ast wrongs do not in themselves amount to that real and imminent threat of injury necessary to make out a case or controversy."); O'Shea v. Littleton, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.").

Even if plaintiff's claim were construed as seeking monetary relief for past conduct, it would fail. A Bivens action does not lie against a federal agency or the United

States.  Corr. Serv. Corp. v. Malesko, 534 U.S. 61, 71-72 (2001) (no Bivens claims against BOP or United States); F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994) (no Bivens claim against a federal agency).  A theory of respondeat superior will not support a Bivens claims against supervisory personnel.  Black v. United States, 534 F.2d 524, 528 (2d Cir. 1976).  The pleading requirements for supervisor liability are no different in Bivens actions from those in an action brought under 42 U.S.C. § 1983.  Id.; see also Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  "The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated."  Iqbal, 490 F.3d at 152-53 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); see also Noguera v. Hasty, No. 99 Civ. 8786 (KMW)(AJP), 2001 WL 243535, at *1 (S.D.N.Y. Mar. 12, 2001) (applying Colon factors to Bivens action).

Here, plaintiff has not alleged a plausible claim against the BOP Defendants.  There is no suggestion that any action or failure to act on their part, whether through a policy or custom, deliberate indifference or gross negligence, caused the purported failure of notification of the Second Circuit's ruling.  There is no basis for liability under any

Case 1:07-cv-05959-PKC-DCF   Document 57   Filed 08/04/2008   Page 10 of 13

-10-

cognizable theory alleged in the Amended Complaint.

The claims against the BOP Defendants do not state a claim upon which relief may be granted.

V.

Plaintiff has asserted a variety of claims against his former counsel, Maranda Fritz, who was appointed to represent him under the CJA. The eighth through fifteenth and seventeenth and eighteenth claims assert state law claims for malpractice, fraud, deceit, misrepresentation, concealment, breach of fiduciary duty, breach of ethical duty, breach of contract, trover, conversion, replevin, violations of New York Judiciary Law §487, New York General Business Law §349, and intentional infliction of emotional distress. The sixteenth claim asserts a "racial discrimination claim in violation of 42 U.S.C. §1981." The fourth and fifth claims are also asserted against Fritz and invoke 42 U.S.C. §§1985 and 1986.

The claims all relate to Fritz's legal representation of plaintiff in connection with post-conviction proceedings in the criminal case asserted against him. New York has a bright-line rule applicable to claims against an attorney arising from a representation of a plaintiff in a criminal proceeding. As the New York Court of Appeals has stated, the rule is as follows:

> To state a cause of action for legal malpractice arising from negligent representation in a criminal proceeding, plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense . . . , for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie.

Carmel v. Lunney, 70 N.Y.2d 169, 173 (1987). The rule is rooted in "overriding policy concerns" of the state and has been reaffirmed by the New York Court of Appeals. Britt v. Legal Aid Soc., Inc., 95 N.Y.2d 443, 449 (2000) ("The interests of judicial economy militate

against a rule where litigious criminal defendants can occupy the time of their incarceration by pursuing civil actions against their former attorneys." (citation omitted)). Given the public policy considerations that underlie the rule, New York would apply the rule to all claims, regardless of the label attached to them, where the gravamen of the complaint is an attorney's failure to adequately and competently represent a defendant.

The conviction remains undisturbed and no credible claim of actual innocence has been made. The evidence at trial demonstrated that Ajaj had traveled to a terrorist training camp on the Afghanistan-Pakistan border and learned how to build explosive devices. United States v. Salameh, 152 F.3d 88, 107 (2d Cir. 1998). He and Ramzi Yousef plotted to blow up targets in the United States. Id. Ajaj endeavored to renter the United States on an Iraqi passport with manuals for manufacturing bombs. Id.

The direct history of the proceedings in the criminal case has been given 32 entries on Westlaw and it is not necessary to review the entirety of that history to adjudicate this claim. Following the trial, defendant Fritz filed post-trial motions on plaintiff's behalf, petitioned for a writ of mandamus and briefed the appeal, which was argued over a two-day period. The Court affirmed the conviction but remanded for resentencing in an opinion that spans 90 pages in the published reporter. Fritz filed a petition for a writ of certiorari and, when it was denied, filed a petition for rehearing of the order denying the petition for certiorari. Fritz pursued a motion for a new trial on the basis of newly-discovered evidence and a claim of ineffective assistance of trial counsel, which was denied in the district court. She represented the defendant on an appeal from those rulings and an appeal from resentencing. The Court affirmed the denial of a motion for a new trial in a summary order, United States v. Salameh, 16 Fed. Appx. 73 (2d Cir. 2001), and affirmed the decision on

resentencing in a published opinion, United States v. Salameh, 261 F.3d 271 (2d Cir. 2001). Fritz petitioned for rehearing; the petition was denied on September 19, 2003. United States v. Salameh, No. 99-1619 (2d Cir. Sept. 19, 2003).

All claims against defendant Fritz arising under state law are dismissed. With regard to plaintiff's claims under section 1981(Sixteenth Cause of Action), 1985 (Fourth Cause of Action) and 1986 (Fifth Cause of Action), Fritz has not adequately supported her argument in support of dismissal of those claims and, therefore, the motion is denied with respect to those claims. In any future briefing on the issue, the parties should address the impact of Nnebe v. United States, __ F.3d __, 2008 WL 2789495 (2d Cir. July 21, 2008) and ¶IX.C of the Second Circuit's CJA Plan.

VI.

The motions to dismiss the First Amended Complaint are granted as to all defendants and all claims, except that the motion of defendant Fritz is denied as to the Fourth, Fifth and Sixteenth Causes of Action.

All other motions or applications for relief are denied, including plaintiff's motion for imposition of sanctions pursuant to Rule 11, Fed. R. Civ. P.

SO ORDERED.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 4, 2008