USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AHMED MOHAMMAD AJAJ,

                              Plaintiff,

       -against-

MARANDA E. FRITZ,

                              Defendant.
------------------------------------------------------------X

07 Civ. 5959 (DF)

**MEMORANDUM AND OPINION**

**DEBRA FREEMAN, United States Magistrate Judge:**

In this civil rights action, before me on consent pursuant to 28 U.S.C. § 636(c), defendant Maranda Fritz ("Fritz") has moved to dismiss all remaining claims asserted against her in the Second Amended Complaint filed by *pro se* plaintiff Ahmed Mohammad Ajaj ("Plaintiff"). For the reasons discussed below, the motion (Dkt. 129) is granted, and this action is dismissed.

## BACKGROUND

### A. Procedural History

Plaintiff is currently serving a prison sentence for a 1994 federal conviction. *See United States v. Salameh*, 152 F.3d 88, 158 (2d Cir. 1998) ("*Salameh II*"). In the direct appeal from his conviction and sentence, as well as in other post-conviction proceedings, Plaintiff was represented by defendant Fritz, who had been assigned by the Court (Duffy, J.) to serve as his appellate counsel under the Criminal Justice Act. (*See* Plaintiff's Supplement and Second Amended Complaint, dated Sept. 23, 2009 ("2d Am. Compl.") (Dkt. 127), ¶ 44; Declaration of Khardeen I. Shillingford, Esq., dated Mar. 8, 2010 (Dkt. 130) ("Shillingford Decl."), ¶ 3.) Plaintiff now alleges that Fritz conspired with others to conceal from him the fact that his various criminal appeals had come to an end in the Court of Appeals, effectively preventing him

from filing timely petitions for certiorari, habeas, and other relief. (*See generally* 2d Am. Compl.; *see id.* at 1 (incorporating by reference Plaintiff's First Amended Complaint, dated Oct. 9, 2007 ("1st Am. Compl.") (Dkt. 17).)

On August 4, 2008, the Honorable Kevin P. Castel, U.S.D.J., who was then presiding over this case, dismissed all of Plaintiff's claims in this case, except for the claims that Plaintiff has asserted against Fritz under Sections 1981, 1985, and 1986 of Title 42 of the United States Code. (*See* Memorandum and Order, dated Aug. 4, 2008 (Dkt. 57).)[1]

On February 4, 2010, this Court granted Plaintiff leave to amend his pleadings to amplify the factual allegations underlying his remaining claims against Fritz. (Dkt. 129.) The Court, however, denied without prejudice Plaintiff's motions for leave (a) to join, as a new defendant in the case, Khardeen I. Shillingford, Esq. ("Shillingford"), who allegedly worked with Fritz on Plaintiff's criminal case and now represents Fritz in this civil matter, and (b) to disqualify Shillingford from representing Fritz in this case. (*Id.*) The Court indicated that these two additional motions could be renewed, should Plaintiff's claims against Fritz survive a motion to dismiss that Fritz indicated she intended to file in response to the Second Amended Complaint. (*Id.*)

---

[1] In that Memorandum and Order, Judge Castel suggested that *Nnebe v. United States*, 534 F.3d 87 (2d Cir. 2008) (recalling mandate affirming plaintiff's criminal conviction and sentence as remedy for his criminal attorney's violation of the Criminal Justice Act plan in failing to file a timely certiorari petition), might have some bearing on Plaintiff's claims, and directed the parties to address the impact of that case in any future briefing on the viability of Plaintiff's claims. At a conference on February 2, 2010, this Court raised doubts as to whether the relief granted in *Nnebe* could be available in this case, given that Fritz is the only remaining defendant. In response, Plaintiff suggested that his claims against the United States, which was originally a named defendant, should not have been dismissed by Judge Castel. In the pending motion, the parties do not discuss *Nnebe* or its potential impact on the remaining claims against Fritz. Further, the time to request reconsideration of Judge Castel's order dismissing all claims against the United States has lapsed.

Now before the Court is a motion by Fritz to dismiss all of Plaintiff's remaining claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] (Dkt. 129.) Plaintiff has opposed the motion. (Dkt. 133.) Further, after Fritz filed and served her reply brief in support of her motion (Dkt. 136), Plaintiff submitted three documents, each entitled "Motion For Judicial Notice," requesting that the Court take "judicial notice" of certain facts and case law, which he believes to be relevant to Fritz's motion to dismiss (*see* Motions for Judicial Notice (Dkts. 137-39)). The Court has considered these "motions" by Plaintiff as sur-replies in opposition to Fritz's motion, and has treated any additional factual allegations contained therein as incorporated into Plaintiff's pleadings.[3] (*See* Discussion *infra* at Point I.)

B. **Factual Background**

The following alleged facts, taken from the Second Amended Complaint, Plaintiff's sur-reply briefs, and public court records from Plaintiff's criminal case, are accepted as true for purposes of this motion. (*See* Discussion *infra* at Point I.)

1. **Plaintiff's Conviction and Appeals**

Plaintiff was convicted of various crimes in connection with the 1993 bombing of the World Trade Center, and was sentenced to a prison term of 240 years. *See Salameh II*, 534 F.3d at 108. In the spring of 1994, the Court appointed Fritz to serve as Plaintiff's appellate counsel. (*See* 2d Am. Compl., ¶ 44; Shillingford Decl., ¶ 3.) Although this Court does not have,

---

[2] In her first motion to dismiss, Fritz did not specifically argue that Plaintiff had failed to state a claim under Sections 1981, 1985, and 1986. In any event, the defense of failure to state a claim under Rule 12(b)(6), which is the basis for Fritz's pending motion, is not waivable. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)

[3] The Clerk is therefore directed to rename the documents filed as Docket Nos. 137, 138, and 139 as "sur-reply submissions," and to remove any indication on the Docket that they are open "motions."

before it, the underlying criminal file in this case, the Court has attempted to piece together, from available information, the procedural history of Plaintiff's appeals and other post-conviction applications.

It appears that Fritz, on behalf of Plaintiff, filed a notice of appeal with the Second Circuit, but, before that direct appeal was perfected, the Court of Appeals remanded the case to the district court, so that Plaintiff could first proceed with motions to vacate the conviction and sentence based on newly discovered evidence and the alleged ineffective assistance of trial counsel. *See United States v. Salameh*, 84 F.3d 47, 48 (2d Cir. 1996) ("*Salameh I*") (setting out procedural history). Following a hearing in the district court, at which the presiding judge expressed skepticism as to the newly-discovered-evidence claim before Fritz had fully briefed the issue, Fritz petitioned the Second Circuit for mandamus, which the Court of Appeals denied without prejudice to renew under specified circumstances. *See id.* at 48-49.

After some later delays in the final resolution of the motions pending before the district court, the Second Circuit granted a motion by Fritz to reinstate Plaintiff's direct appeal. *See id.* at 51. On August 4, 1998, the Court of Appeals denied the appeal, but remanded the post-trial motions on newly discovered evidence and ineffective assistance of counsel for further proceedings. *Salameh II*, 152 F.3d at 108. Fritz then filed a petition for rehearing by the Court of Appeals, which was denied; a petition for a writ of certiorari to the Supreme Court, which was denied; and a petition for rehearing of the order denying the petition for writ of certiorari, which was denied. *See Ajaj v. United States*, 526 U.S. 1044 (1999).

Fritz also pursued the motions pending before the trial court (to vacate Plaintiff's conviction and sentence), but those motions were eventually denied. *See United States v. Salameh*, 54 F. Supp. 2d 236 (S.D.N.Y. 2001). Fritz challenged that decision of the district court

4

on another appeal to the Second Circuit, which was denied on August 6, 2001. *See United States v. Salameh*, 261 F.3d 271 (2d Cir. 2001). Following the attacks of September 11th, Fritz requested and received an enlargement of time within which to prepare and file a petition for rehearing with a suggestion of rehearing *en banc*, which was ultimately filed in August 2002. On September 19, 2003, the Second Circuit denied the petition for rehearing. *See United States v. Salameh*, No. 99-1619 (2d Cir. Sept. 19, 2003). The attorneys for Plaintiff's co-defendants, who were similarly situated to Plaintiff, filed timely petitions for writs of certiorari, which were denied by the Supreme Court. (*See* Dkt. 137, ¶ 11 and Ex. 1; *see also Abouhalima v. United States*, 536 U.S. 967 (2002); *Salameh v. United States*, 537 U.S. 847 (2002). Fritz apparently did not file a petition for a writ of certiorari on behalf of Plaintiff, nor did Plaintiff file such a petition on his own behalf. (*See* Dkt. 137, ¶ 12; Memorandum of Law in Support of Motion to Dismiss Plaintiff Ahmed Mohammed Ajaj's Second Amended Complaint (Dkt. 130) ("Fritz Mem."), at 5.)

### 2. **Plaintiff's Claims Against Fritz**

In this case, Plaintiff claims that, beginning in September 2002, Fritz and others conspired to deprive him of his ability to obtain relief from his conviction and sentence by, *inter alia*, concealing and/or misrepresenting relevant information about his case, refusing to release legal materials to him, interfering with his efforts to proceed *pro se*, and preventing him from filing a complaint against Fritz. (*See* 2d Am. Compl. ¶¶ 27-28, 107.[4]) In particular, Plaintiff

---

[4] Petitioner's Second Amended Complaint reads as follows, in pertinent part:

> Defendants Fritz [and others] conspired amoung themselves . . . to deprive Plaintiff of equal protection of the law, his right to adequate, effective, and meaningful access to the courts, his liberty without proper procedural and substantive due process of law to

5

alleges that Fritz and others concealed from him the Second Circuit's decision, dated September 19, 2003, denying his petition for rehearing. (*Id.*, ¶ 30.) According to Plaintiff, on December 30, 2003, Fritz "allowed" Shillingford to tell Plaintiff that his petition for rehearing was still pending, even though, in fact, it had already been denied by the Second Circuit. (*Id.*, ¶ 31.) Plaintiff also alleges that court staff concealed the fact that the rehearing petition had been denied, and fabricated records stating that the order was mailed to Plaintiff. (*Id.*, ¶¶ 89-90.) Plaintiff claims that he did not learn that the rehearing petition had been denied until July 12, 2005, and, as a result, he missed the deadline to file a petition to the Supreme Court for a writ of certiorari, as well as the deadline to file a petition for a writ of habeas corpus. (*Id.*, ¶ 33.)

In addition, Plaintiff alleges that Fritz had promised to file a petition for a writ of certiorari, a habeas petition, and other motions and pleadings, but failed to do so. (*Id.*, ¶¶ 42-44;

---

> keep him wrongfully incarcerated and to subject him to cruel and unusual punishment, and his right to petition the courts and government for redress of grievances without racially motivated interference by wrongfully and intentionally concealing information crucial to Plaintiff's ability to obtain redress through the courts, preventing him from filing a timely petition with the U.S. Supreme Court, a habeas corpus petition and other motions challenging his wrongful conviction and sentence and the district court's and court of appeals' reliance, as the basis for their decisions denying him relief, on the demonstrably false evidence and arguments advanced by the government, refusing to release to him his legal materials, participating in covering up their involvement in the conspiracy, suppressing and fraudulently misrepresenting material information that they were and are under duty to disclose to Plaintiff, deceiving the court and the Plaintiff, preventing him from filing complaint against defendant Fritz, rejecting his pro se filings, letters and requests, unlawfully denying his pro se motion, and frustrating any redress he might seek.

(2d Am. Compl. ¶ 27.)

*see also id.*, ¶¶ 59-67, 74 (alleging that Fritz failed to take appropriate action in response to Plaintiff's complaints of mental and physical abuse by employees of the Bureau of Prisons and other government employees).) Plaintiff further alleges that Fritz failed to respond to Plaintiff's numerous letters seeking information about the status of his case and his repeated attempts to speak with her. (*Id.*, ¶ 42.) According to Plaintiff, Fritz also deliberately refused to withdraw as his attorney of record in his criminal case, in order to prevent Plaintiff from learning, on his own, about the status of his case, and to prevent him from filing motions and other papers with the courts on a *pro se* basis. (*Id.*, ¶ 48.)

Plaintiff alleges that these acts by Fritz and others were taken because Plaintiff is an "Arab and Muslim prisoner." (1st Am. Compl, ¶¶ 90-91.) According to Plaintiff, Fritz "harbors a[n] ethnic and religious-based discriminatory animus against Arab and Muslim litigants and prisoners as a class" (2d Am. Compl., ¶ 108), a bias that, Plaintiff suggests, arose as a result of the attacks of September 11th. Plaintiff alleges that, in responses to requests for admissions (served by Plaintiff prior to the most recent amendment of his pleading), Fritz admitted that, between September 2002 and March 2006, she responded to letters and requests for advice made to her by non-Arab clients, and she kept non-Arab clients fully apprised of all material aspects of their cases. (*See id.*, ¶¶ 109-18.[5]) Read liberally, Plaintiff also alleges that Shillingford – when

---

[5] Plaintiff pleads, for example, that "on August 25, 2009, defendant Fritz admitted in writing that 'during the time period between September 2002 and March 2006, [she] did respond to letters sent to [her] by [her] non-Arab clients'" (2d Am. Compl., ¶ 111), "'kept [her] non-Arab clients fully apprised of all material aspects of their cases'" (*id.*, ¶ 113), "'did timely notify [her] non-Arab clients of decisions and/or orders issued by courts in their cases'" (*id.*, ¶ 114), and "'did not allow[] the statutory time limitations to run against [her] non-Arab clients' claims'" (*id*, ¶ 116).

7

she was a staff member at Fritz's law firm, assisting with Plaintiff's case – treated him differently than non-Arab clients of the firm. (*Id.*, ¶ 138.)

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). A *pro se* complaint is to be read liberally and held to "less stringent standards" than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (noting that "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest'" (collecting authority)). "'Although a court should generally refrain from considering matters outside the pleadings when reviewing a 12(b)(6) motion to dismiss, the mandate to liberally construe *pro se* pleadings makes it appropriate to consider the facts set forth in plaintiff's opposition papers.'" *Falso v. Gates Chili Cent. Sch. Dist.*, 680 F. Supp. 2d 465, 466 (W.D.N.Y. 2010) (quoting *Acheampong v. United States*, Nos. 99 Civ. 2169 (SWK), 99 Civ. 3491 (SWK), 2000 U.S. Dist. LEXIS 12775, at *11 (S.D.N.Y. Sept. 5, 2000)).

Nonetheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quotation marks, citation and alterations

omitted). In addition, even plaintiffs who are proceeding *pro se* must comply with any relevant procedural and substantive rules, and, to survive a motion to dismiss, a *pro se* complaint, like any other complaint, must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In other words, a plaintiff is required to amplify a claim with some factual allegations so as to allow the Court to draw the reasonable inference that the defendant is liable for the alleged conduct. *See Iqbal*, 129 S. Ct. at 1949.

### B. Section 1981

Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons." 42 U.S.C. § 1981(a); *see Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (collecting cases). To establish a Section 1981 claim, a plaintiff must be able to demonstrate the following elements: (1) that he is a "member[] of a racial minority"; (2) that it was the defendant's "intent to discriminate on the basis of race"; and (3) that the discrimination concerned "one of the statute's enumerated activities." *Johnson v. City of New York*, 669 F. Supp. 2d 444, 449 (S.D.N.Y. 2009) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)). Although Section 1981 does not prohibit discrimination on the basis of religion or national origin, *see Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609-13 (1987), it is relevant to this case that the first requirement of the statute (that the plaintiff be a member of a "racial minority") can be satisfied by a showing that the plaintiff was "born an Arab," *id.* (noting

that "racial" discrimination may be broadly defined as intentional discrimination based solely on a person's "ancestry or ethnic characteristics").

In order to state a claim for racial discrimination under Section 1981, a plaintiff "must allege with specificity 'circumstances giving rise to a plausible inference of racially discriminatory intent.' Conclusory allegations of racially motivated animus are insufficient." *Johnson*, 669 F. Supp. 2d at 450 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). Moreover, a plaintiff must plead "fact-specific allegation[s] of a causal link between defendant's conduct and the plaintiff's race." *Reyes v. Erickson*, 238 F. Supp. 2d 632, 638 (S.D.N.Y. 2003).

### C. Sections 1985 and 1986

To state a claim under Sections 1985 and 1986, a plaintiff must plead, *inter alia*, a conspiracy between two or more persons with the intent to deprive the plaintiff of equal protection of the law. 42 U.S.C. §§ 1985(2)-(3), 1986. In this regard, the plaintiff must allege that there is "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Johnson*, 669 F. Supp. 2d at 451 (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 829 (1983); *see also Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) ("[H]ints at some tenuous link between [a] conspiracy and the fact that plaintiff was [of a certain race or other protected class] are insufficient to state a claim for conspiracy to deprive plaintiff of his civil rights.").

## II. PLAINTIFF'S CLAIMS

Plaintiff has failed to plead sufficient facts to support a plausible claim, under Section 1981, that the complained-of conduct by Fritz was done with the intent to discriminate against him as an Arab. Similarly, Plaintiff's claims under Sections 1985 and 1986 fail because

10

he has not pleaded facts rendering it plausible that Fritz, in concert with any alleged co-conspirators, discriminated against him based on his membership in any protected class, whether as an Arab or a Muslim.

As the Supreme Court explained in *Iqbal*, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that are "merely consistent with" a defendant's liability are insufficient if they do not establish the "plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a plaintiff has pleaded a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In this case, Plaintiff's sole basis for his discrimination claims appears to be Fritz's admissions that she did not neglect her "non-Arab" clients during the same time-frame when, according to Plaintiff, she allegedly neglected him. (*See supra* at 7 and n.5.) Plaintiff, however, has not cited any admissions by Fritz (and, perhaps, he did not request any) regarding her treatment, in general, of her Arab clients,[6] and he makes no allegations that, in fact, she treated Arabs differently, as a class. Without such allegations, it is difficult to draw the logical inference suggested by Plaintiff – *i.e.*, that Fritz treated classes of clients differently based on their race. *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 175 (2d Cir. 2010) (affirming

---

[6] Fritz has informed the Court that she did have Arab clients other than Plaintiff. (Fritz Mem., at 14-15.)

11

dismissal for failure to allege any facts supporting an inference of racial animus where plaintiff, a black resident allegedly denied a housing subsidy, merely alleged that non-black residents were granted subsidies). As framed, Plaintiff's allegations appear to say little more than that Fritz's alleged failings in Plaintiff's particular case were not typical for her. Thus, despite Plaintiff's assertions of discriminatory intent, it would be just as plausible to conclude that the cause of Fritz's alleged misconduct toward Plaintiff was that there was some sort of personal rift between them, or that Fritz's failure to inform Plaintiff of the Court of Appeal's final decision was the result of negligence, rather than animosity.

In any event, Plaintiff's allegations must be viewed in the context of this particular case. Here, beginning with her appointment in the spring of 1994, Fritz would have been aware that Plaintiff is an Arab, of the Muslim faith. Moreover, she would have known that Plaintiff had been convicted of crimes related to a significant act of terrorism – specifically, the 1993 World Trade Center bombing. Yet a review of the reported decisions in Plaintiff's criminal case reveals that Fritz represented Plaintiff zealously, through most of a lengthy appellate process, seeking to overturn his conviction by filing and pursuing collateral motions in the district court, two appeals, together with various petitions and motions in the Court of Appeals, and at least one set of petitions in the Supreme Court.

Moreover, Plaintiff's speculation that Fritz's alleged animus toward Arabs and Muslims arose in the wake of September 11th is not supported by the time-line of her representation of Plaintiff. As an initial matter, it seems highly unlikely that a lawyer who had actively represented an Arab, Muslim man following his conviction of terrorist acts would have then refused to continue because of another terrorist attack. Regardless, Fritz continued to take steps on behalf of Plaintiff *after* September 11, 2001, including, at a minimum, obtaining an extension

12

to file and, in August 2002 – nearly a year after the September 11th attacks – filing a petition for rehearing with the Second Circuit. Indeed, Plaintiff does not allege any misconduct by Fritz until, at the earliest, September 2002, when she allegedly failed to respond to Plaintiff's letters requesting information about his criminal case. (*See, e.g.*, 2d Am. Compl., ¶ 42.) Based on her vigorous representation of Plaintiff prior to September 11th, and her continued vigorous representation of him for at least a year afterwards, racial and/or religious animus is simply not a plausible explanation for Fritz's alleged misconduct, and the Court thus finds that Plaintiff has failed to "nudge [his] claims across the line from the conceivable to plausible," *see Twombly*, 550 U.S. at 570. Accordingly, his claims must be dismissed.

   The Court should not dismiss a *pro se* complaint "without granting leave to amend at least once[,] when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (quotation marks and citation omitted). In this case, however, Plaintiff has already amended his Complaint twice, including, most recently, to add factual allegations to amplify his claims against Fritz under Sections 1985, 1986 and 1981. Further, on this motion, the Court has considered not only the allegations of the Second Amended Complaint (and Plaintiff's earlier pleadings, as incorporated therein), but also the additional allegations raised in Plaintiff's opposition and sur-reply submissions, which Plaintiff filed after having had the opportunity to review Fritz's memorandum and reply briefs in support of her motion to dismiss. Even in the case of a *pro se* litigant, leave to amend should not be granted, where it appears that a further amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). In this instance, the Court is persuaded that any further amendment would indeed be futile, and, therefore, it is appropriate to dismiss Plaintiff's claims with prejudice.

## CONCLUSION

For the foregoing reasons, Fritz's motion (Dkt. 129) to dismiss the Second Amended Complaint is granted, with prejudice. The Clerk of Court is directed to close this case on the Docket of the Court.

Dated: New York, New York
March 16, 2011

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Mr. Ahmed Mohammad Ajaj
Reg # 40637-053
U.S. Penitentiary Marion
PO Box 1000
Marion, IL, 62959

Khardeen Shillingford, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue, 4th Floor
New York, NY 10017